UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America ex rel.           )
MICHAEL MEJIA, K831363,                     )
                                            )
                        Petitioner,         )
                                            )
            v.                              )           13 C 3403
                                            )
RICK HARRINGTON, Warden,                    )
Menard Correctional Center,                 )
                                            )
                        Respondent.         )


## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the petition for a writ of habeas corpus filed by petitioner Michael Mejia ("Mejia") pursuant to 28 U.S.C. § 2254 ("Section 2254"). For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

Following a jury trial in the Circuit Court of Cook County, Illinois, Mejia was convicted of first degree murder and aggravated discharge of a firearm. The trial court originally sentenced Mejia to thirty years for the murder conviction and twenty-five years for attempted first degree murder, to be served concurrently. However, the trial court erred when it sentenced Mejia for attempted murder, a charge that had been

dismissed, instead of his aggravated discharge of a firearm conviction. The trial court then resentenced Mejia to concurrent sentences of thirty years for first degree murder and ten years for aggravated discharge of a firearm. Mejia is currently incarcerated at the Menard Correctional Center in Menard, Illinois, where he is in the custody of the warden of that facility, Defendant Richard Harrington ("Harrington").

Mejia directly appealed his convictions, and on March 30, 2004, the Illinois Appellate Court affirmed his convictions (except for requiring the trial court to resentence him on the correct aggravated discharge of a firearm conviction). Mejia filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court. On October 6, 2004, the Illinois Supreme Court denied Mejia's PLA.

On July 25, 2003, while his direct appeal was pending, Mejia filed a pro se post-conviction petition alleging various claims. Mejia then amended his petition, adding more claims. The trial court dismissed all but one—it ordered an evidentiary hearing on Mejia's claim that he was actually innocent based upon three alleged recantation affidavits.

At the evidentiary hearing on January 8, 2010, the evidence established that none of the alleged affiants had signed or authored the affidavits and that the notary seal affixed to the affidavits had been stolen around the time that the affidavits were dated. The trial court found that the affidavits were fraudulent and deemed Mejia's actual innocence claim meritless.

After the evidentiary hearing, the circuit court denied Mejia's post-conviction petition after finding that the proffered affidavits in support of his actual innocence claims were fraudulent. His motion to reconsider was denied. On December 6, 2010, Mejia filed a notice of appeal.

On January 12, 2012, Mejia's appointed appellate counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), because he concluded that an appeal would be without arguable merit. Mejia answered with a motion to proceed pro se and a response to the *Finley* motion. After careful examination of the record, the Illinois Appellate Court granted the *Finley* motion and affirmed the order of the circuit court, finding no issues of arguable merit to be asserted on appeal. On September 26, 2012, the Illinois Supreme Court denied Mejia's post-conviction PLA.

Mejia filed his first federal habeas petition in 2009 pursuant to Section 2254. It was dismissed without prejudice for failure to exhaust state remedies. After fully exhausting his state court remedies, Mejia filed this timely federal habeas petition on May 6, 2013.

## DISCUSSION

Mejia raises the following arguments in his habeas petition: (A) the Illinois Department of Corrections ("IDOC") unconstitutionally added a three-year mandatory supervised release ("MSR") term to Mejia's sentence ("Claim A"); (B) the evidence was insufficient to convict ("Claim B"); (C) Mejia was denied due process when the trial court allowed Detective Butler ("Butler") to testify to Mejia's post-arrest

statements regarding his gang membership and tattoos, including publication of photos of Mejia's tattoos to the jury ("Claim C"); (D) Mejia was denied due process when the trial court permitted the jury to see inflammatory photos of the victim ("Claim D"); (E) Mejia was denied due process and a fair trial when the prosecutor, during closing argument, misstated the law of accountability, misstated the evidence, improperly argued the relevance of Mejia's tattoos, shifted the burden to the defense, and improperly argued that witnesses were afraid ("Claim E"); (F) the admission of Vanessa Rios's ("Rios") written statement violated Mejia's rights under the Confrontation Clause ("Claim F"); (G) trial counsel was ineffective for having failed to: (1) object to the prosecutor's misstatement of the law and inflammatory statements during closing argument ("Allegation G1"); (2) object to the admission of inflammatory exhibits, the prejudicial effect of which outweighed their probative value ("Allegation G2"); (3) object to the admission of Rios's written statement as involuntary ("Allegation G3"); (4) object to the trial court's use of Illinois Pattern Instruction ("IPI") 3.06-3.07 regarding Mejia's statements to police without first determining that Mejia's admissions had been made voluntarily and in a manner that suggested he had made the statements ("Allegation G4"); (5) request that the trial court redact portions of Rios's written statement as speculation ("Allegation G5"); (6) request that the trial court redact portions of Rios's grand jury testimony as speculative ("Allegation G6"); (7) move to suppress Mejia's statements regarding his tattoo and gang involvement ("Allegation G7"); (8) call Mejia to testify on his own

behalf ("Allegation G8"); (9) adequately inform Mejia of his right to testify ("Allegation G9"); (10) request an accomplice-witness instruction for Rios's written statement ("Allegation G10"); and (11) preserve the issues set forth in Mejia's post-conviction petition ("Allegation G11") (collectively "Claim G"); (H) appellate counsel was ineffective for having failed to: (1) argue that the prosecutor's statements in closing argument implicated Mejia's right to remain silent in violation of the Fifth Amendment ("Allegation H1"); and (2) raise unspecified "wholly meritorious" issues ("Allegation H2") (collectively "Claim H"); and (I) all Illinois state courts violated federal law as established by the United States Supreme Court ("Claim I").

## I. Claims A, B, C, D, E, G7, and I

### A. Procedural Default

Harrington argues that Mejia failed to exhaust Claims A, B, C, D, E, and G7. With respect to Claim I, even though Harrington does not mention it in his answer, this Court will determine whether Mejia fully exhausted it in direct or state collateral proceedings. A petitioner must present his claims to all levels of the Illinois courts to avoid procedural default. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (to preserve a claim for federal habeas review, petitioner "was required to raise the claim at each level of state court review: in his initial post-conviction petition, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court"). To fairly present a claim to the Illinois Supreme Court, a petitioner must set it forth in his PLA and cannot direct the court to review other

documents in the record. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004). At each level of state review, a petitioner must provide operative facts and legal principles that control each claim to the state courts. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). A "passing reference" to a constitutional right does not fairly present a claim. *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001). It is not enough for the state claim and the federal claim to arise from the same facts—instead the federal court must ask "whether the petitioner has framed his claim in the state proceedings in a way that brings to mind a specific constitutional right, and whether he has alleged a set of facts well within the mainstream of constitutional litigation." *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007) (internal quotation marks omitted). The federal court must assess "whether the petitioner alerted the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis." *Id*. at 670.

### 1. Claims A, C, D, E, and G7

Mejia argues that he fully presented Claim A, which states that the IDOC unconstitutionally added a three-year term of MSR to his sentence. Harrington claims that Mejia failed to present this claim in his post-conviction trial court petition, thereby rendering it procedurally defaulted. Harrington is correct. Mejia argued in his amended post-conviction petition that the reenacted Illinois's Truth-in-Sentencing Act violated the Illinois Constitution by denying first degree murder defendants the ability to receive good conduct credit and by classifying all persons convicted of first

degree murder as similarly situated. Mejia did not mention if there was a federal nature to this claim. He only argued a violation of the Illinois statute, and it is not enough that this state claim in his amended post-conviction petition and Claim A arise from the same facts. Therefore, this Court holds that Mejia failed to properly present Claim A to the trial court in his post-conviction proceedings because he did not alert the court of any possible federal issue contained in Claim A. Claim A is procedurally defaulted.

As for Claim C, Mejia alleges he was denied due process when the trial court permitted Butler's testimony about Mejia's post-arrest statements regarding gang affiliation and tattoos, including publication of photos of his tattoos to the jury. Mejia presented this claim on direct appeal and in his direct appeal PLA. However, Harrington suggests that when Mejia presented this claim, he only did so as an issue of Illinois evidentiary law, not federal law. Construing the claim liberally due to Mejia's pro se status, this Court will assume arguendo that the claim is cognizable for the sake of this analysis. *See Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).

This Court is required to determine whether the admission of the testimony and photos regarding Mejia's tattoos and gang affiliation was so severe that it deprived him of due process. *See Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001) (due process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process). It is axiomatic

that "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet*, 390 F.3d at 511. "[O]nly if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id*. Matters of evidentiary rulings are usually beyond the scope of federal habeas review. *Id*.

While Mejia argued to the Illinois Courts in his direct appeal papers that the evidence about his gang affiliation and tattoos had been improperly admitted into evidence, he never mentioned a due process violation. Regardless, these alleged errors of state law, themselves, are not cognizable on habeas review because they do not reach to the level of fundamental unfairness or deprive Mejia of his constitutional due process rights. Therefore, Claim C is denied.

In Claim D, Mejia alleges that he was denied due process of law when the trial court permitted the jury to see inflammatory photos of the victim in his post-conviction petition. Harrington avers that Mejia did not present Claim D in his post-conviction appeal or post-conviction PLA. In his reply, Mejia responds that he presented Claim D in his response to the *Finley* motion and in his post-conviction PLA. After closely reviewing the record, the Court agrees that Mejia did present arguments in those papers about his trial counsel's failure to object to the trial court's erroneous admission of inflammatory exhibits to the jury and that the prejudicial effect of admitting these exhibits served to deny him his right to a fair trial. Since the Illinois Appellate Court granted the *Finley* motion, and in doing so, wrote that it had carefully reviewed the record and found no arguable issue of merit, such a disposition

is a decision on the merits, and this Court will again accept, for the sake of argument, that Claim D is a cognizable claim. *See Wilkinson v. Cowan*, 231 F.3d 347, 350-52 (7th Cir. 2000). Even on that assumption, the trial court's decision to allow the jury to see photos of the victim was a state evidentiary ruling beyond the scope of federal habeas review. Similar to Mejia's other claims that the state court made evidentiary errors, this Court finds that allowing the jury to see these photos of the victim did not deprive Mejia of due process and Claim D is therefore denied.

Mejia asserts in Claim E that he was denied a fair trial when the prosecutor misstated the law of accountability, shifted the burden to the defense, and improperly argued during closing argument that witnesses were afraid. Harrington claims that while Mejia fully presented this claim on direct appeal before the Illinois Supreme Court in his PLA, he addressed it in only a single sentence, stating: "The State made numerous improper comments designed to prejudice Petitioner's right to a fair trial and its decision conflicts with many decisions of this Court specifically *People v. Mullen* (1990) 141 Ill.2d 394." Mejia responds by claiming that he fully presented this claim to the Illinois Supreme Court by attaching the appellate briefs and appellate court order to his PLA. This Court concludes that the vague reference in Mejia's direct appeal PLA and his attached documents fall short of providing any supportive operative facts or legal principles that would have assisted the Illinois Supreme Court in making a full and fair assessment of Mejia's federal claim. Indeed, Harrington is correct that *Mullen* is an Illinois Supreme Court case that does not apply federal law

and would not have alerted the state court of any federal nature of Mejia's claim. Claim E is denied.

Harrington claims that Allegation G7, which states that Mejia's trial counsel was ineffective for having failed to move to suppress Mejia's statements regarding his tattoos and gang involvement is procedurally defaulted because Mejia failed to present it to the post-conviction trial court. Mejia responds that he included Allegation G7 in his amended petition for post-conviction relief, satisfying the exhaustion requirement. After carefully reviewing the record, this Court agrees with Mejia. Thus, Allegation G7 will be addressed with the other ineffective assistance of trial counsel allegations in Part IV, *infra*.

### 2. Claims B and I

Mejia posits in Claim B that there was insufficient evidence to convict him beyond a reasonable doubt. Harrington argues that Mejia only presented this claim on direct appeal, not in his direct appeal PLA or post-conviction proceedings. Mejia's appointed appellate counsel included the following statements in the direct appeal PLA: (i) "While the evidence against the shooter was undeniably strong, the evidence against Petitioner, who simply stood next to the shooter, was non-existent"; and (ii) "The evidence failed to establish either the existence of a prior plan or that Petitioner performed any actions which aided and abetted the undisputed shooter. Therefore, the evidence failed to establish Petitioner's guilt beyond a reasonable doubt."

The Court concludes that these allegations in Mejia's PLA overlap with what Mejia alleges in his habeas petition as Claim E, that he was denied a fair trial when the prosecutor misstated the law of accountability. Besides these passing references intertwined in Claim E, Mejia failed to provide operative facts and legal principles to fully present Claim B. He also did not directly include this specific claim in any of his post-conviction papers. Thus, Mejia failed to present Claim B through one complete round of state court review in either direct or state post-conviction proceedings. Claim B is therefore denied.

Regarding Claim I, Mejia asserts that all courts violated clearly established federal law as determined by the United States Supreme Court. Neither Harrington in his answer nor Mejia in his reply addresses Claim I. After reviewing the record, Claim I was not fully and fairly presented to the state court in either direct or post-conviction proceedings. Claim I is procedurally defaulted.

**B. Exceptions to Procedural Default**

The Court must now consider whether any instances of procedural default can be excused. A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The cause and prejudice exception applies when "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 n. 24 (1999). The fundamental miscarriage of justice exception applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To show actual innocence, a petitioner must present "new, reliable evidence of his innocence" so convincing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup*, 513 U.S. at 329); *see Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) ("To support a colorable claim of actual innocence, the petitioner must come forward with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.") (internal quotation marks omitted).

Because Mejia has pursued neither the cause and prejudice nor the fundamental miscarriage of justice exceptions in his habeas petition, this Court finds that his defaults cannot be excused. *See, e.g., Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). For the sake of thoroughness, the Court will address Mejia's assertion that *Martinez v. Ryan* applies as an exception to procedural default of Allegation G7, an ineffective assistance of trial counsel claim. 132 S. Ct. 1309 (2012). However, this

Court has already established that Mejia did not procedurally default Allegation G7, so *Martinez* is inapposite.

## II. Claim F—Right to Confrontation

Mejia alleges that he was denied due process and his Sixth Amendment confrontation right was violated when the trial court submitted Rios's written statement to the jury without allowing his trial counsel to cross-examine her on it. Harrington argues that Mejia forfeited this claim on direct appeal when he challenged the admissibility of the statement, but not under the Confrontation Clause. Harrington also suggests that Claim F is meritless because Rios testified at trial and was subject to cross-examination.

In her written statements, Rios provided descriptions and observations of the night of the shooting. She also testified at Mejia's trial and when asked certain questions, she gave answers inconsistent with her written statement and grand jury testimony. Rios admitted that she had made up the written statement and lied to the grand jury because she had been scared. Because Rios provided inconsistent statements at trial, the trial court allowed both of the prior statements to be admitted as substantive evidence. During trial, she was available for cross-examination by Mejia's counsel.

With respect to the merits of Claim F, to obtain relief, Mejia must show that there is a clearly established Supreme Court precedent addressing this issue, and that the state court's decision was contrary to or an unreasonable application of that

precedent. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006). The Supreme Court has held that trial courts have wide discretion to limit cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As long as the trial court does not curtail cross-examination to the point that the defendant is unable to expose the witness's bias and motivation to lie, the reasonable limitations imposed by the court do not rise to the level of a Sixth Amendment violation. *Id*. at 678-79. If the defendant is given sufficient opportunity "to expose a motive to lie, it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury." *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir. 1994).

The Illinois Appellate Court held in its March 30, 2004 order that the trial court had not erred when it admitted Rios's prior statements because it had been in the trial court's sound discretion to admit the evidence. This Court agrees. The Confrontation Clause does not restrain the admission of Rios's written statements since she had been subject to cross-examination during Mejia's trial. *See Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004) (citing *California v. Green*, 399 U.S. 149, 162 (1970)) ("When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). As Mejia's counsel had the opportunity to cross-examine Rios and elicit evidence for the jury to evaluate any bias or motive she may have had, this Court finds that Mejia's confrontation right was not violated. Therefore, the Illinois Appellate Court's rejection of Mejia's claim that the trial court violated his confrontation right because

Rios's inconsistent statements were admitted as substantive evidence is not contrary to or an unreasonable application of Supreme Court precedent. Claim F is denied.

### III. Claim H—Ineffective Assistance of Appellate Counsel

Mejia asserts two specific allegations in his ineffective assistance of appellate counsel claim. These claims are not procedurally defaulted and will be addressed on the merits. Mejia alleges that his appellate counsel was ineffective for having failed to argue that the prosecutor's statements in closing argument implicated Mejia's right to remain silent in violation of the Fifth Amendment (Allegation H1), and his appellate counsel failed to raise unspecified "wholly meritorious" issues (Allegation H2). Harrington argues both allegations are meritless.

Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Howard v. Gramley*, 225 F.3d 784, 789–90 (7th Cir. 2000). A petitioner who contends that appellate counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner in the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal. *Id.* at 790.

As the Supreme Court has noted, the hallmark of effective appellate advocacy is to winnow out weaker arguments on appeal and focus on the issues more likely to

prevail. *Smith v. Murray*, 477 U.S. 527, 536 (1986). Performance is deemed insufficient when counsel omits a "significant and obvious issue" without a legitimate strategic reason for doing so. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996).

In the instant case, after Mejia was arrested, he was given his *Miranda* rights and waived his right to remain silent. He then gave a statement to the police, revealing his gang affiliation and denying his involvement in the shooting. In his closing argument, the prosecutor stated: "He [Mejia] never said hey police officers, get me out of this mess. I want nothing to do with it." In evaluating prosecutorial misconduct, it is not enough that a prosecutor's remarks were "undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

Upon review of the record, this Court determines that Mejia's appellate counsel produced one hundred pages of well-researched arguments in his appellate brief, raising five distinct issues on appeal. His appellate counsel focused on the issues regarding the State's accountability case, not the comments the prosecutor made during his closing arguments. However, that decision to emphasize the issues Mejia's appellate counsel thought would succeed was an effective assistance in the sense that it led to a sentence reduction of ten years. This Court finds that the appellate counsel's choice not to address the prosecutor's closing argument was not objectively unreasonable under *Strickland*. Allegations H1 and H2 are not more meritorious than

- 16 -

the other issues Mejia's appellate counsel raised, and habeas relief based on Claim H must therefore be denied.

## IV. Claim G—Ineffective Assistance of Trial Counsel

Mejia argues that his trial counsel was ineffective in eleven respects. The Court listed these arguments in the Background section of this opinion and declines to relist them here for the sake of brevity. It has been established in Part I, *supra*, that Allegation G7 is not procedurally defaulted and is included in Claim G.

As seen in Part III, *supra*, *Strickland* governs ineffective assistance of counsel claims. Under *Strickland*, to establish an ineffective assistance of counsel claim, Mejia must show that: (i) his counsel's performance fell below an objective standard of reasonableness; and (ii) he suffered substantial prejudice as a result. *See* 466 U.S. at 674. To judge the reasonableness of the state court's adjudication, this Court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The "bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one." *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003).

After Mejia's post-conviction appointed counsel moved to withdraw under *Finley*, the Illinois Appellate Court reviewed Mejia's ineffective assistance of trial counsel claims on the merits and rejected them in a summary order. Harrington relies on the Illinois Appellate Court's dismissal of this claim when granting the *Finley* motion and argues the Illinois Appellate Court's adjudication of this claim was a

reasonable application of the law. No issues of arguable merit had been asserted in Mejia's appeal, so the Illinois Appellate Court affirmed the circuit court's order denying it.

After thoroughly reviewing the record, taking careful note of the findings within the *Finley* motion and summary order, this Court agrees that the Illinois Appellate Court's rejection of Mejia's ineffective assistance of trial counsel claim (and Allegations G1-G11) was reasonable. Although the Illinois Appellate Court's summary order did not provide detailed reasoning for why it had dismissed Mejia's ineffective assistance of counsel claim, there is no reason for this Court to determine what arguments could have supported the Illinois Appellate Court's decision. Nothing in the record indicates that there was an unreasonable application of the controlling law to the facts because each of the ineffective assistance of trial counsel allegations in Mejia's laundry-list lacked merit and failed to show that Mejia faced substantial prejudice as a result. A trial counsel's decisions to present certain witnesses, defenses, or evidence receive much deference because they are strategic choices and "because of the distorting effect of hindsight in making a *post hoc* assessment of counsel's strategic assessments." *Vera-Natal v. Hulick*, 05 C 1500, 2005 WL 3005613 (N.D. Ill. Nov. 7, 2005); *see also Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000) ("[M]any trial determinations, like so many other decisions that an attorney must make in the course of representation, are a matter of professional judgment. Thus, we must resist a natural temptation to become a

'Monday morning quarterback." ') (internal punctuation and citations omitted). Thus, this Court declines to delve into specific reasons why each of the eleven fully-exhausted allegations fail under *Strickland* because it has found that the state court decision was not contrary to clearly established federal law.

All of Mejia's claims, therefore, fail to satisfy the standard for habeas relief. Accordingly, this Court denies his habeas petition.

## V. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should be issued. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the

constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

Based on the reasons stated in this opinion, Mejia has not established "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient change of the denial of a constitutional right that he deserves encouragement to proceed further." *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Therefore, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Mejia's petition for a writ of habeas corpus and declines to issue a certificate of appealability.

_____
Charles P. Kocoras
United States District Judge

January 10, 2014
Dated: _____